UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARRIE TRIPP,

    Plaintiff,

v.                                    Case No. 1:08-cv-669

                                         Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on April 19, 1964, and has completed high school (AR 68, 83).[1] She alleged a disability onset date of June 4, 2004 (AR 73). Plaintiff had previous employment as a cashier, department leader in a toy store and office manager (AR 85). Plaintiff identified her disabling conditions as severe pain in both knees when standing and sitting, and depression (AR 78). In her disability report, plaintiff described the limitations posed by her illnesses as follows, "I can only stand or sit for short periods of time without being in severe pain" (AR 78-79).

After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on February 29, 2008

---

[1] Citations to the administrative record will be referenced as (AR "page #").

(AR 12-24). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since May 15, 2004, the alleged onset of disability (AR 15). At step two, the ALJ found that she suffered from severe impairments of osteoarthritis of the knees, obesity and depression (AR 15). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 17). The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to perform the requirements of work as defined in 20 CFR 404.1567(b) except for lifting and/or carrying more than 20 pounds occasionally and 10 pounds frequently; standing and/or walking for more than a total of six hours in an eight-hour workday; and concentrating to execute more than simple, routine job instructions and tasks.

(AR 19). The ALJ found that plaintiff was unable to perform her past relevant work (AR 22).

At the fifth step, the ALJ determined that plaintiff had the RFC to perform a range of light work, which includes the following jobs in the regional economy: assembler (14,000 jobs); hand packager (7,000 jobs); and visual inspector/sorter (6,500 jobs) (AR 23-24). Accordingly, the ALJ determined that plaintiff was not under a disability and entered a decision denying benefits (AR 24).

## III. ANALYSIS

Plaintiff raises three issues on appeal:

### A. The ALJ violated the treating physician rule

Plaintiff contends that the ALJ did not give controlling weight to two statements made by her treating physician, David Ottenbaker, M.D., regarding plaintiff's ability to squat or

kneel. Plaintiff's Brief at 7. First, plaintiff cites a doctor's note from February 2, 2006, which states in part:

> At this point [plaintiff] continues to suggest that she cannot stand for prolonged periods of time or sit for prolonged periods of time. She really cannot squat or kneel, and we did write that on the disability form as well. The patient also knows that weight loss is really her only treatment at this point.

(AR 212). Second, the doctor's sworn statement from May 18, 2006 that plaintiff's severe osteoarthritis in the knee causes chronic pain and decreased mobility, with the result that "[s]he has a hard time even sitting long periods of time with stiffness walking, bending, squatting, twisting, et cetera" (AR 220). Plaintiff contends that the ALJ should have incorporated these restrictions into the hypothetical question posed to the vocational expert (VE).

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"). In this case, the ALJ posed three hypothetical questions to the VE, none of which included a restriction on squatting or kneeling (AR 329-31).

The ALJ observed that the Dr. Ottenbaker's notes did not document any abnormality of plaintiff's gait and "little mention within his records of actual objective findings regarding

5

examinations of the claimant's knees" (AR 20).  The ALJ noted that the medication therapy for plaintiff's knee symptoms had not been extensive, essentially consisting of only one anti-inflammatory (AR 21).  The ALJ then reviewed the squatting and kneeling limitation:

> Most interestingly, the undersigned notes that Dr. Ottenbaker noted in January 2006 that he received a "disability assessment form" from claimant's attorney and completed it the following month, with indication that she should not squat or kneel [AR 212]; however, no "disability assessment form" from Dr. Ottenbaker has been submitted for the record by the claimant's attorney.  Other than his comment in the treatment note dated February 2006 that the claimant should not squat or kneel, the record contains no evidence that Dr. Ottenbaker, who has been the claimant's primary-care physician since at least March 2000, has imposed any restrictions upon her ability to perform the physical demands of work activity.

(AR 21).

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997).  The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight."  *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2).  An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation.  *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).  In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings

and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

In this case, the ALJ properly rejected Dr. Ottenbaker's statements regarding plaintiff's lack of ability to squat and kneel. There is no evidence that the doctor restricted plaintiff from squatting or kneeling following a clinical evaluation of this alleged restriction. Rather, the doctor made only two brief references to her inability to squat and kneel in the record. While Dr. Ottenbaker's February 2006 note observes that plaintiff "really cannot squat or kneel," the doctor's subsequent statement in May 2006 does not conclude that she cannot squat or kneel; rather, the doctor testified that plaintiff experienced "stiffness" walking, bending, squatting and twisting (AR 220). There is no record of clinical testing by Dr. Ottenbaker to support any particular limitation in plaintiff's ability to squat or kneel. In contrast to Dr. Ottenbaker's statements, plaintiff was able to squat and recover with a knee flexion of 80 degrees at a consultative examination in May 2005 (AR 177). Based on clinical testing, the examining physician concluded that plaintiff had the ability to sit, stand, bend, stoop, squat and arise from squatting (AR 180). Accordingly, this claim of error should be denied.

### B. The ALJ lacked valid reasons to reject plaintiff's credibility

Plaintiff contends that the ALJ improperly evaluated her credibility. It is the ALJ's function to resolve conflicts in the evidence and determine issues of credibility. *See Siterlet v. Secretary of Health and Human Servs.*, 823 F. 2d 918, 920 (6th Cir. 1987) (per curiam); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). An ALJ may discount a claimant's credibility where

7

the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. *See also Tyra v. Secretary of Health and Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990) (ALJ may dismiss claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) (an ALJ's credibility determinations are accorded deference and not lightly discarded).

The ALJ's decision noted that at the administrative hearing, plaintiff testified that she was unable to work due to pain and swelling in her knees, a need to use restroom facilities two to three times per hour due to a side effect of a blood pressure medication (Avalide), and depression (AR 15). After considering the evidence, the ALJ found that while plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, "her statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible" (AR 20). The ALJ stated that he made this determination in light of plaintiff's medical history, her medication usage, the findings made upon objective clinical examinations, and discrepancies between her allegations and information contained in the medical reports of record" (AR 20). The ALJ noted that plaintiff's obesity is well documented, but that the record contained no evidence that the obesity resulted in musculoskeletal, cardiovascular or respiratory limitations (AR 20). The ALJ observed that Dr. Ottenbaker had no reports of plaintiff experiencing side effects from her hypertension medication (AR 20, 219). While plaintiff had osteoarthritis of the knees diagnosed as early as 2002, clinical examinations of plaintiff's knees from 2002 to 2004 revealed

no warmth, swelling, or erythema, and that she exhibited normal strength and sensation in her lower extremities (AR 20, 153-59). In addition, Dr. Sheill found that plaintiff could squat, and that there was no effusion of her knees and only minor crepitation (AR 20, 176-81).

### 1. Plaintiff's credibility with respect to her physical ailments

Plaintiff contends that the ALJ's credibility determination is in error, because he rejected plaintiff's symptoms of: frequent urination; use of a walking stick when hiking; swollen knees; and, inability to squat and kneel. Plaintiff's Brief at 10. The court disagrees. For the reasons stated below, the ALJ could properly discount plaintiff's credibility because her claims are inconsistent with the evidence contained in the administrative record. *See Walters*, 127 F.3d at 531.

Plaintiff's testimony regarding frequent urination conflicts with the evidence. Allegations of a medication's side effects must be supported by objective medical evidence. *Farhat v. Secretary of Health and Human Servs.*, No. 91-1925, 1992 WL 174540 at * 3 (6th Cir. July 24, 1992). *See*, *e.g.*, *Bentley v. Commissoner of Social Security*, No. 00-6403, 2001 WL 1450803 at *1 (6th Cir. Nov. 6, 2001) (noting absence of reports by treating physicians that claimant's "medication caused drowsiness as a side effect"); *Dodd v. Sullivan*, 963 F.2d 171, 172 (8th Cir. 1992) (no evidence in record that claimant told his doctors that the medication made him drowsy); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (noting that the record did not disclose concerns about side effects by the several doctors who examined and treated claimant). Here, there was no such evidence. While Dr. Ottenbaker noted that an increased urge to urinate is a "possible" side effect of the plaintiff's medication, there is no record of plaintiff complaining about the side effects (AR 219).

9

Next, the ALJ found no evidence that plaintiff has been unable to ambulate effectively, nor that she required the use of an assistive device to ambulate (AR 20).[2] Plaintiff stated that she needs a walking stick when trying to hike with her family (AR 108-9). A person's use of a walking stick when hiking does not mean that the person cannot ambulate effectively. Many people who are not disabled find a walking stick useful while hiking. There is no evidence that Dr. Ottenbaker, or any other medical provider, prescribed plaintiff with a cane or other assistive device. *See generally, Anthony v. Astrue*, 266 Fed. Appx. 451, 457-58 (6th Cir. 2008) (claimant could ambulate effectively, where he had been walking on an injured leg for more than two decades and could walk without the use of a hand-held assistive device except over uneven ground).

Next, plaintiff's complaint that she is disabled by swollen knees is contradicted by the medical evidence. Defendant points out that x-rays, MRI's and clinical examination found no evidence of swelling or effusion (AR 127-29, 155-56, 177). *See* SSR 96-7p ("[a] report of negative findings from the application of medically acceptable clinical and laboratory diagnostic techniques is one of the many factors that appropriately are considered in the overall assessment of credibility").

---

[2] For purposes of determining a listed musculoskeletal impairment, the "inability to ambulate" is defined as follows:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(1).

Finally, at the administrative hearing, plaintiff testified that "I can't squat, bending my knees causes a lot of pain" (AR 313). As previously discussed, the ALJ found that the medical evidence was inconsistent with these allegations.

### 2. Plaintiff's credibility with respect to her mental impairments

Plaintiff contends that the ALJ improperly included references to her lack of mental health treatment in assessing her overall credibility, including her credibility as to her physical condition. Plaintiff's Brief at 10.

Plaintiff alleged before the ALJ that she suffered from disabling depression. The administrative record includes two psychiatric review technique forms and records reflecting plaintiff's psychological treatment (AR 182-85, 223-51). At the administrative hearing, counsel elicited substantial testimony from plaintiff regarding the extent of her depression (AR 318-23). The ALJ noted that since March 2002 (more than two years before plaintiff's alleged disability onset date), plaintiff had received little or no mental health treatment other than medication (AR 22). The ALJ devoted a considerable portion of his decision addressing this alleged mental impairment and addressing plaintiff's credibility with respect to this claim (AR 16-19, 21-22). Plaintiff has raised no issue in this court pertaining to the ALJ's finding regarding her mental health.

First, the ALJ did not use plaintiff's lack of credibility regarding her mental health to disparage her claims of physical disability. Second, an ALJ is free to consider all aspects of a case in determining a plaintiff's credibility. *See Siterlet, supra,* at 920. This contention is without merit.

### 3.   Conclusion

Plaintiff has failed to present a compelling reason for this court to disturb the ALJ's credibility determination. *See Smith*, 307 F.3d at 379. Accordingly, plaintiff's claims of error should be denied.

### C.   The ALJ's errors mandate and award of benefits

Finally, plaintiff contends that this matter should be remanded to the Commissioner to award her benefits because defendant did not carry his burden of proof at the last step of the sequential process. The Commissioner's decision denying benefits can be reversed and benefits awarded only if there is an adequate record demonstrating that "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). *See generally, Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir.1994) ("[i]f a court determines that substantial evidence does not support the [Commissioner's] decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits"). For the reasons stated in the report, the court finds there is substantial evidence to support the ALJ's decision in this instance.

## IV.   Recommendation

I respectfully recommend that the Commissioner's decision be affirmed.


Dated:  April 21, 2009                             /s/ Hugh W. Brenneman, Jr.
                                                   HUGH W. BRENNEMAN, JR.
                                                   United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).